No. 22-11462

———————————

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————

PAUL OSSMANN,

*Plaintiff-Appellant,*

v.

MEREDITH CORPORATION,

*Defendant-Appellee,*

———————————

On Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-03200-SDG

———————————

## REPLY BRIEF FOR APPELLANT

———————————

Jack Rosenberg
5425 Glenridge Drive Ste 53
Atlanta, GA 30342
(404) 343-1091
jackrosenberg2@gmail.com

Marc N. Garber
Alan H. Garber
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Road, Suite
Marietta, Georgia 30068-5648
(678) 560-5066
mngarber@garberlaw.net
ahgarber@garberlaw.net

*Counsel for Plaintiff-Appellant*

No. 22-11462

*Paul Ossmann v. Meredith Corporation*

## SECOND AMENDED CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant-plaintiff Paul Ossmann certifies that the persons and entities listed below have an interest in the outcome of this case—an asterisk (*) marks previously unlisted or corrected persons and entities added to Appellant's original CIP and a double asterisk (**) marks previously unlisted or corrected persons and entities added to Appellant's initial Amended CIP:

1) Baker & Hostetler LLP (attorney for appellee)

2) Barnum, Eric Leroy (attorney appellee)

3) BlackRock Fund Advisors (10% or more stockholder of appellee)**

4) Garber, Alan H. (attorney for appellant)

5) Garber, Marc N. (attorney for appellant)

6) Gray Hawkeye Stations, Inc. (affiliate of appellee)*

7) Gray Media Group, Inc. (affiliate of appellee)*

8) Gray Television, Inc. (parent corporation of appellee [NYSE: GTN and GTN-A])*

No. 22-11462

*Paul Ossmann v. Meredith Corporation*

## SECOND AMENDED CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT
### (*continued*)

9)  Grimberg, Hon. Steven D. (United States District Judge, Northern District of Georgia)

10) Hawkeye Acquisition, Inc. (affiliate of appellee)*

11) Larkins III, Hon. John K. (United States Magistrate Judge, Northern District of Georgia)

12) Meredith Corporation (appellee)*

13) Ossmann, Paul (appellant)*

14) Robinson, Mitchell (attorney for appellee)

15) Rosenberg, Jack (attorney for appellant)

16) State Street Global Advisors (10% or more stockholder of appellee)**

17) The Garber Law Firm, P.C. (attorney for appellant)

18) WGCL-TV/CBS 4 (subsidiary of appellee)**

19) Wiltshire, Adama K. (attorney for appellee)**

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS
 AND CORPORATE DISCLOSURE STATEMENT ............................ C-1

TABLE OF CONTENTS ................................................................... i

TABLE OF CITATIONS ................................................................ iii

ARGUMENT AND CITATIONS TO AUTHORITIES ............................ 1

    1.   Meredith Uses an Altered Version of the EEO Analysis
         Created Post-Firing to Misstate Key Facts ................................... 1

    2.   Meredith Incorrectly States that the EEO Analysis Identifies
         the Race of Two Black Employees Fired for Harassment ............. 6

    3.   Under § 1981, Race Need Only Be "*A*" But-For Cause for the
         Challenged Decision—Not the *Sole* But-For Cause ..................... 8

    4.   Using Every Employees' Race to Make Employment
         Decisions is No Defense to Using Any Employee's Race ............ 11

    5.   VP Bock's Use of the EEO Analysis to Fire Ossmann Makes
         It Direct Evidence—Even Though Circumstantial Evidence
         Proves Bock's Use ........................................................................ 16

    6.   Meredith Failed to Carry Its *McDonnell Douglas* Burden of
         Production Because It Offered No Specific Evidence of Bock's
         Actual Reason for Firing Ossmann ............................................. 19

    7.   VP Bock was the Final Decisionmaker and Received and
         Reviewed the EEO Analysis to Fire Ossmann ............................ 22

# TABLE OF CONTENTS
## (continued)

<b><u>Page</u></b>

8.   Meredith Waived or Abandoned All Arguments Regarding Its Assertion that Ossmann Testified He was Not Fired Because of Race...............................................................25

9.   Meredith's Conflicting Statements About the EEO Analysis's Origins—Not Its Assertion of Attorney Work Product—Shows Discriminatory Intent ......................................27

10.  Meredith's Cat's-Paw Arguments Are Meritless.........................29

11.  The Unsigned 12/06/17 Warning is Proof that No Violation Occurred and of Pretext...............................................................32

CERTIFICATE OF COMPLIANCE...........................................................vii

CERTIFICATE OF SERVICE...................................................................viii

# TABLE OF CITATIONS

**Page**

## SUPREME COURT

\* *Bostock v. Clayton Cnty., Georgia,*
140 S. Ct. 1731 (2020) ....................................................... 9, 10, 13, 14,
15, 16, 17

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,*
140 S. Ct. 1009 (2020) ............................................................. 8

*Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003) .................................... 22

*Gratz v. Bollinger,* 539 U.S. 244 (2003) .................................................. 12

*Patterson v. McLean Credit Union,* 491 U.S. 164 (1989) ....................... 11

*Powers v. Ohio,* 499 U.S. 400 (1991) ................................................ 12, 13

*Reeves v. Sanderson Plumbing Prod., Inc.,*
530 U.S. 133 (2000) ............................................................. 5, 7, 27, 28

*Ricci v. DeStefano,* 557 U.S. 557, 563 (2009) ......................................... 15

*Schutz v. Jordan,* 141 U.S. 213 (1891) .................................................... 24

*Wilson v. United States,* 162 U.S. 613 (1896) .................................... 5, 27

*Wright v. West,* 505 U.S. 277 (1992) .................................................. 5, 27

*Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267 (1986) ............................ 13

## ELEVENTH CIRCUIT

*Alexander v. Fulton Cnty., Ga.,*
207 F.3d 1303 (11th Cir. 2000) .......................................................... 13

# TABLE OF CITATIONS
## (continued)

**Page**

*Anterio v. City of High Springs Fla.*,
762 F. App'x 891 (11th Cir. 2019) (unpublished) .............................. 31

*Banana Servs., Inc. v. M/V Tasman Star*,
68 F.3d 418 (11th Cir. 1995) .............................................................. 32

\* *Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*,
256 F.3d 1095 (11th Cir. 2001) .............................................. 12, 17, 19

*Bonner v. City of Prichard*,
661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) .................................. 9

*Cora Pub, Inc. v. Cont'l Cas. Co.*,
619 F.2d 482 (5th Cir. 1980) .............................................................. 24

*Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008) .............................. 31

*Duncan v. Alabama*,
734 F. App'x 637 (11th Cir. 2018) (unpublished) .............................. 31

*Gattis v. Brice*,
136 F.3d 724, 727 (11th Cir. 1998) ...................................................... 31

*Hamilton v. Southland Christian Sch., Inc.*,
680 F.3d 1316, 1318 (11th Cir. 2012) ................................................ 26

*Haynes v. McCalla Raymer, LLC*,
793 F.3d 1246 (11th Cir. 2015) .......................................................... 26

\* *Holland v. Gee*,
677 F.3d 1047 (11th Cir. 2012) .................................................... 16, 17

*Hurlbert v. St. Mary's Health Care Sys., Inc.*,
439 F.3d 1286 (11th Cir. 2006) .......................................................... 33

## TABLE OF CITATIONS
### (continued)

**Page**

\* *IMPACT v. Firestone*,
    893 F.2d 1189 (11th Cir. 1990) ........................................ 19, 20, 21, 22

*Jackson v. City of Killeen*, 654 F.2d 1181 (5th Cir. 1981) ........................ 9

*Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989) ........................... 18, 30

\* *Lee v. Russell Cnty. Bd. of Educ.*,
    684 F.2d 769 (11th Cir. 1982) ........................................ 4, 21

*Mason v. Village of El Portal*, 240 F.3d 1337 (11th Cir. 2001) ......... 30, 31

*Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir. 1997) ............... 18

*Mitchell v. USBI Co.*, 186 F.3d 1352 (11th Cir. 1999) ............... 18, 22, 32

*Pittman v. Hattiesburg Mun. Separate Sch. Dist.*,
    644 F.2d 1071 (5th Cir. 1981) ........................................... 10

*Ramsey v. Board of Regents of Univ. Sys. of Georgia*,
    543 F. App'x 966 (11th Cir. 2013) (unpublished) ........................ 15, 16

*Rojas v. Fla.*, 285 F. 3d 1339 (11th Cir. 2002) ........................................ 32

*United States v. Wilson*, 788 F.3d 1298 (11th Cir. 2015) ....................... 28

\* *Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998) .............................. 20

*Whiting v. Jackson State Univ.*, 616 F.2d 116 (5th Cir. 1980) .............. 12

*Youmans v. Gagnon*, 626 F.3d 557 (11th Cir. 2010) ............................... 31

*Young & Vann Supply Co. v. Gulf, F. & A. Ry. Co.*,
    5 F.2d 421, 423 (5th Cir. 1925) ........................................... 5

# TABLE OF CITATIONS
## (continued)

**Page**

\* *Ziyadat v. Diamondrock Hosp. Co.,*
    3 F.4th 1291 (11th Cir. 2021) ........................................................ 8, 30

## OTHER CIRCUITS

*Am. Boat Co., Inc. v. Unknown Sunken Barge,*
    418 F.3d 910 (8th Cir. 2005) ........................................................ 24, 25

*Ball v. Kotter*, 723 F.3d 813 (7th Cir. 2013) ............................................ 24

*Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339 (6th Cir. 2012) ......... 31

## CONSTITUTION AND STATUTES

U.S. Const. Amend. XIV (Equal Protection Clause) ......................... 12, 13

42 U.S.C. § 1981 ............................................................................. *passim*

42 U.S.C. § 1981(b)(2) ................................................................................ 11

## RULES

Fed. R. Evid. 803 ..................................................................................... 21

11th Cir. R. 3-1 ..................................................................................... 4, 26

11th Cir. R. 28-5 ....................................................................................... 25

## ARGUMENT AND CITATIONS TO AUTHORITIES

### 1. Meredith Uses an Altered Version of the EEO Analysis Created Post-Firing to Misstate Key Facts

Meredith's brief uses a *post-firing* version the EEO Analysis [Doc. 62-20] that it *altered* after learning Ossmann hired a lawyer [Doc. 71-16 at 1]—not the *actual* EEO Analysis used by VP Kandis Bock [Doc. 71-4].[1]  Resp. Br. 7-9, 21-22, 41.  Meredith altered the form on "April 26, 2019" [Doc. 62-20 at 5]—three weeks after firing Ossmann.

The altered EEO form deletes information that proves Bock's firing decision was pretextual and inserts self-serving material Bock *never* saw.  Specifically, Meredith changed the date of Ossmann's last alleged co-worker complaint from "December 6, **2019**"—a date still six months in the future from the original EEO form's creation and Ossmann's firing—to "December 6, **2017**."  And Meredith added another ex-employee fired for sexual harassment along with related data.

A side-by-side comparison of the actual EEO Analysis to the altered EEO Analysis shows the changes:

---

[1] All record references, including to transcripts, are to the document number and page number that appear in the header generated by the district court's electronic filing system.

## Actual EEO Analysis Used by Bock

Case 1:19-cv-03200-SDG-JKL    Document 71-4    Filed 06/07/21    Page 2 of 4

To: Law Department
Attorney Work Product

Prepared by and Date: Laurel Berenguer on April 5, 2019
Location: WGCL-TV, Atlanta
Business Rationale: Discharge for Policy Violation Sexual Harassment/Hostile Environment

| Employee | Title | Race | Sex | Grade | Adjusted Hire / Orig Hire | Service Years | DOB / Age | Status | Salary | Weekly Salary | PSC? Employment Agreement? (Provide copy) | Performance Appraisal Ratings (Last 2 Years) | Severance (includes 2 wks notice) Estimate | Date Informed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Paul D Ossmann | Anchor/Reporter Weather | W | M | E12 | 1/19/2012 | 7.21 | 6/18/1957 - 61 | AFR | $135,000.00 | 2596.15 | Y | 2017 - 4 2018 - 3 | N/A | TBD |

**\* \* \***

| | |
|---|---|
| **10** | **In reviewing the existing and proposed organizational charts, is a particular protected category of employee being impacted by the restructure at a higher percentage rate than similarly situated non-protected employees? Conduct a Risk Analysis as appropriate (Tab 4).** |
| | Reference Risk Analysis |
| **11** | **Are there documented performance concerns with the impacted employee? Provide copies of written documentations. List on spreadsheet.** |
| | **Provide chronology with dates of conversations management had with employee and topics discussed.** |
| | April 5, 2016 - Employee was coached by EP Alex Spearman for participating in conversations of a sexual nature with co-workers. |
| | May 15, 2017 - Employee received a written warning for exercising poor judgment in using the term "cockblocked" |
| | December 6, 2019 - Employee received a final written warning for exercising poor judgment in sending highly inappropriate FaceBook messages to a female producer |
| | May, 2018 - Employee received a notice of a concerning level of sick leave usage. |
| **12** | **Does the impacted employee participate in Meredith's stock option award program?** |
| | No |
| **13** | **Does the impacted employee have a personal service contract (PSC). If yes, secure a copy.** |
| | Yes - attached |
| **14** | **Is this a performance issue which should be dealt with in that manner or is it a restructure or position elimination?** |

Doc. 71-4 at 2 (notations added).

## Altered EEO Analysis Created Post-Firing

Case 1:19-cv-03200-SDG-JKL    Document 62-20    Filed 04/14/21    Page 5 of 5



Doc. 62-20 at 5 (notations added).

The new data Meredith added about the four disciplined employees (with names redacted) is at the end of the altered EEO form under the heading "Policies Violated ...."  A comparison shows:

| Policies Violated or recent (prior 2 years) medical leave or accommodation requests, if applicable. | | | | | |
|---|---|---|---|---|---|
| See above documented issues | | | | | |

Doc. 71-4 at 3 (actual)

| Policies Violated or recent (prior 2 years) medical leave or accommodation requests, if applicable. | | | | | |
|---|---|---|---|---|---|
| See above documented issues | | | | | |
| | | | | | |
| | | 7/17/1983 | 37 | | 6/1/2017 | 33.90 |
| | | 3/27/1974 | 46 | | 8/1/2014 | 40.38 |
| | | 8/21/1962 | 58 | | 12/14/2017 | 55.35 |
| | | 7/20/1958 | | 53 | 1/17/2012 | |

Doc. 62-20 at 5 (altered).

Meredith's improper use of Doc. 62-20 adds nothing to its position. But it provides more proof of discriminatory intent to Ossmann's.

As a matter of law, Meredith cannot use any part of Doc. 62-20 as evidence of a legitimate non-discriminatory reason for Bock's decision to fire Ossmann:

> If there was no evidence that asserted reasons for discharge were *actually relied on*, the reasons are not sufficient to meet defendant's rebuttal burden [under *McDonnell Douglas*].

*Lee v. Russell Cnty. Bd. of Educ.*, 684 F.2d 769, 775 (11th Cir. 1982) (emphasis added).  Here, the altered EEO form did not exist when Bock fired Ossmann.  So, obviously, Bock could not have "actually relied on" anything in it.  *Id*.  Doc. 62-20 and its contents are irrelevant.  *Id.*

Also, the magistrate judge rejected Doc. 62-20 in favor of Doc. 71-4, finding:  "[HR manager] Berenguer updated the form … shortly after Plaintiff's discharge …. The Court will rely on the original version." Doc. 79 at 23 n.14.  Meredith made no objection to the R&R's finding, thus waiving all factual and legal grounds for using Doc. 62-20 on appeal.  *See* 11th Cir. R. 3-1.

Worse, Meredith sought to influence this Court with a document Meredith knew was *not* the actual EEO Analysis sent to Bock, and which Meredith knew *altered* a crucial date—December 6, 2019, to December 6, 2017—central to Ossmann's pretext argument as to possible justifications for Bock's decision.  Op. Br. 21-22, 52.

Yet Meredith, without disclosing Doc. 62-20's dubious pedigree, passed it off as legitimate and offered a false impression as to what Bock knew *at the time* she fired Ossmann—all of which is further "[p]roof that the defendant's explanation is unworthy of credence …."

*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000).  At trial,

> the trier of fact can reasonably infer from the falsity of the explanation that [Meredith] is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider *a party's dishonesty about a material fact* as "affirmative evidence of guilt."

*Id.* (emphasis added) (citing *Wright v. West,* 505 U.S. 277, 296 (1992); *Wilson v. United States,* 162 U.S. 613, 620-21 (1896)).

Nor should Meredith get a pass because its latest dissembling about the EEO Analysis occurred on appeal rather than in the district court or pre-filing.  *Young & Vann Supply Co. v. Gulf, F. & A. Ry. Co.,* 5 F.2d 421, 423 (5th Cir. 1925) (statements in appeal brief considered admissions of facts).  What is undisputed is Meredith's use of the altered EEO form's new contents—creating new reasons for Bock firing Ossmann—is materially inaccurate and knowingly so.  *See Reeves*, 530 U.S. at 147.

From these facts, a jury could reasonably infer that Meredith's dissembling on appeal is "affirmative evidence of guilt."  *Id.*  This Court should reach the same conclusion.

## 2. Meredith Incorrectly States that the EEO Analysis Identifies the Race of Two Black Employees Fired for Harassment

Meredith trumpets that the EEO Analysis identified the race of the two Black employees fired for sexual harassment. Resp. Br. 8,17, 26. That is false.

The only race data on the EEO Analysis is Ossmann's and his five weather-team colleagues listed as "Comparables." Doc. 71-4 at 2, 3. As for the three individuals (names redacted) listed as having been disciplined, ***no hint of their race*** appears in the EEO Analysis—not white, Black, or anything else:

To: Law Department
Attorney Work Product

| | No this is a policy violation | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **15 Have other employees been in a similar circumstance and, if so, how was that handled and resolved?** | | | | | | | | | | | |
| | ███████████ | was terminated for Sexual Harassment, January 17, 2012, after an investigation. No prior warnings, but had been subject of an internal investigation into harassment in 11 - 12/2011 | | | | | | | | | | |
| | ███████████ | received a written warning for exercising poor judgement/conduct unbecoming a manager in August 1, 2014, with no further incidents | | | | | | | | | | |
| | ███████████ | was terminated for Sexual Harassment/Hostile Workplace Investigation, December 14, 2017 | | | | | | | | | | |
| **Comparables (if applicable)** | | | | | | | | | | | | |
| Alexandra Warsh | Reporter/Anchor WGCL | W | F | P18 (inacti | 9/29/2015 | 3.52 | 10/12/1968 - 50 | APT | $66.00 | 2640.00 | N | N/A - Temp |
| Ella Dorsey | Anchor/Reporter Weather | W | F | E12 | 1/27/2016 | 3.19 | 5/2/1991 - 27 | AFR | $100,000.00 | 1923.08 | Y | 2017 - 3 / 2018 - 4 |
| Jennifer I Engelhard | Anchor/Reporter Weather | H | F | E12 | 6/16/2008 | 10.81 | 11/4/1980 - 38 | AFR | $175,000.00 | 3365.38 | Y | 2017 - 4 / 2018 - 3 |
| Molly McCollum | Anchor/Reporter Weather | W | F | E12 | 5/7/2018 | 0.91 | 2/21/1992 - 27 | AFR | $79,000.00 | 1519.23 | Y | N/A - Hire date |
| Rodney Harris | Reporter/Producer | B | M | N08 | 10/5/2009 | 9.51 | 4/20/1986 - 32 | AFR | $83,000.00 | 1596.15 | Y | 2017 - 3 / 2018 - 4 |

Doc. 71-4 ¶ 15 (highlights added).

Also, Meredith suggests the EEO Analysis compared the races of Ossmann and the two fired Black employees. Resp. Br. 26. That is incorrect. The form's race-based comparison was solely between Ossmann and his five colleagues identified as "Comparables":

```
12          Q     Let's hear your answer as to why race should
13     be a factor in an employment decision.   What --
14                    MR. BARNUM:  Objection; argumentative.
15          A     In my experience, you would want to ensure
16     you're being equitable, so using comparables may
17     include race.
```

Doc. 61-14 at 45:12-:17 (underscore added); Doc. 71-4 at 3.

```
8           Q     Well, how do you know what a comparable is?
9           A     Same job, similar job.
                         *  *  *
13          Q     In this -- so you picked people that had no
14     discipline; correct?
15          A     For the comparable, I picked people who were
16     in similar jobs or the same job, irrespective of
17     discipline.
```

Doc. 62-14 at 63:8-:17 (underscore added).

Meredith's additional mischaracterizations are more "dissembling" about the EEO Analysis's contents to burnish potential justifications for Bock's decision. They are more evidence of discriminatory intent. *Reeves*, 530 U.S. at 147. The Court should consider this evidence in resolving this appeal.

### 3.   Under § 1981, Race Need Only Be "*A*" But-For Cause for the Challenged Decision—Not the *Sole* But-For Cause

Meredith repeatedly says—without citing any authority—that § 1981 requires Ossmann's race to be the "sole reason" or the "sole, 'but for' cause" or the "actual and sole reason" for his termination.  Resp. Br. 11, 15, 28; *id*. 13, 17, 18, 29, 30, 31, 35.  Meredith cites no supporting cases because its contention *contradicts* controlling Supreme Court and Eleventh Circuit precedent.

The Supreme Court, just over two years ago, held that "§ 1981 follows the general rule …, a plaintiff bears the burden of showing that race was *__a__* but-for cause of [his] injury."  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (emphasis and asterisks added).  *Comcast* labeled this standard "[the] ancient and simple 'but for' common law causation test."  *Id*.

This Court, in July 2021 and citing *Comcast*, held that for § 1981 claims, the plaintiff "bears the burden of showing that race was *__a__* but-for cause of his injury."  *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1297 (11th Cir. 2021) (emphasis and asterisks added).  More than 40 years ago, the former Fifth Circuit also held that under § 1981, a plaintiff had to show "that her race was *__a__* 'but for' cause or

determining factor for her discharge." *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981) (emphasis and asterisks added)[2]; *id*. at 1183 n.1.

The Supreme Court has also explained how traditional but-for causation operates:

> the plaintiff's [protected characteristic] *need not be the sole or primary cause* of the employer's adverse action…. So, too, it has *no significance* here if *another factor* … might also be at work, or *even play a more important role* in the employer's decision.

*Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1744 (2020) (emphasis added); *see id*. at 1740 ("because nothing in our analysis depends on the motivating factor test, we focus on the more traditional but-for causation standard …").

A plaintiff will therefore satisfy § 1981's but-for standard: "So long as the plaintiff's [protected characteristic] was *one* but-for cause of that decision, that is enough to trigger the law." *Id*. at 1739 (emphasis added). Ossmann easily meets that standard here.

---

[2] Decisions of the former Fifth Circuit rendered before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The EEO Analysis that VP Bock used to fire Ossmann made his race an explicit negative factor whose consideration was so important it commanded a separate color-coded chart with a detailed race-based comparison.  Doc. 71-4 at 2 ¶ 10, 4 (chart).  But the EEO form did list a handful of other factors.  *Id*. at 2-3.

So it may be that Ossmann's race was not "the sole or primary cause" of Bock's decision.  *Bostock*, 140 S. Ct. at 1744.  It may also be that "another factor … might also be at work, or even play a more important role in [Bock's] decision."  *Id*.  But—contrary to Meredith—§ 1981's traditional but-for causation test renders these possibilities inconsequential at this stage.  *Id*.

Instead, the evidence—in the light most favorable to Ossmann— shows that his "race was still one of the bases on which the defendant [fired him]."  *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1076 (5th Cir. 1981) (applying but-for causation under Title VII).  "This is sufficient to establish employer liability under section [1981]."  *Id*.  Remand for trial is required.

### 4.  Using Every Employees' Race to Make Employment Decisions is No Defense to Using Any Employee's Race

Meredith makes the bizarre argument that its consideration of Ossmann's race did not violate § 1981 because, when it fired two Black employees for sexual harassment, the company also used their race as an explicit factor in those decisions.  Resp. Br. 26.[3]  In other words, Meredith claims immunity from § 1981 liability because the company comparably considers the race of all employees when deciding whether to fire them.  Nonsense.

Race-conscious decisionmaking—for white and Black employees as groups or individuals—violates § 1981.  "The statute prohibits, when based on race, the refusal to enter into a contract with someone[.]"  *Patterson v. McLean Credit Union,* 491 U.S. 164, 176-77 (1989).  "[T]he term 'make … contracts' includes the … termination of contracts."  42 U.S.C. § 1981(b).

---

[3] Meredith wrote:  "Ossmann's argument that the EEO Analysis Form's inclusion of race data makes his termination unlawful ignores the fact that *the same race data was included on EEO Analysis Forms* for the two Black employees who were also terminated for sexual harassment."  (Emphasis added.)

Nor does § 1981's text make comparably considering the different races of all employees a defense.  Just the opposite:  "Discrimination is discrimination no matter what the race [or] color … of the victim." *Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1103 (11th Cir. 2001).

Also, because the Equal Protection Clause does not tolerate Meredith's "all races" defense, neither does § 1981.

> [P]urposeful discrimination that violates the Equal Protection Clause of the Fourteenth Amendment will also violate § 1981.

*Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003); *Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980) ("under section 1981, the plaintiff must establish purposeful discrimination equivalent to … fourteenth amendment dereliction") (employment case).

In *Powers v. Ohio*, 499 U.S. 400 (1991), the Supreme Court held that the race-based exclusion of jurors violated the Equal Protection Clause, even though both white and non-white jurors were equally subject to the prosecutor's peremptory challenges.  *Powers* explained:

> We *reject* as well the view that race-based peremptory challenges survive equal protection scrutiny *because members of all races are subject to like treatment*, which is to say that white jurors are subject to the same risk of peremptory challenges based on race as are all other jurors….

> It is axiomatic that racial classifications do *not* become legitimate on the assumption that all persons suffer them in equal degree.

*Id.* at 410 (emphasis added).

That *Powers* involved jury selection in a criminal case makes no difference. *Id.* The Equal Protection Clause means the same thing in all contexts, including employment. *See Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 273-77 (1986) (applying Equal Protection cases from non-employment contexts to a school-employee-layoff case). Consequently, § 1981 should be understood to reject Meredith's "all races" defense.

Title VII, which also guides the interpretation of § 1981, likewise rejects Meredith's "all races" defense. "[T]he substantive law and proof requirements of Title VII [and] section 1981 … are the same for claims alleging intentional employment discrimination based on race …." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1314 n.6 (11th Cir. 2000) (state-actors case).

In *Bostock*, 140 S. Ct. at 1741, the Supreme Court rejected any kind of "comparable treatment" defense:

> An employer violates Title VII when it intentionally fires an individual employee based *in part* on sex. It doesn't matter if

other factors besides the plaintiff's sex contributed to the decision. *And it doesn't matter if the employer treated women as a group the same when compared to men as a group…*.

Title VII's message is "simple but momentous": An individual employee's sex is "not relevant to the selection, evaluation, or compensation of employees."

*Id*. (emphasis added) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239 (1989)).

Change the words in *Bostock* from "sex" to "race" and from "men" and "women" to "white" and "Black," and Meredith's opposition collapses:

- Ossmann was intentionally fired "based *in part* on [race]."

- "It doesn't matter *if other factors* besides the plaintiff's [race] contributed to the decision."

- "And *it doesn't matter* if [Meredith] treated [whites] as a group the same when compared to [Blacks] as a group."

- "An individual employee's [race] is not relevant to the … evaluation … of employees."

*Id*. (emphasis added) (quotation omitted).

Meredith's admission that it comparably considered the race of white and Black employees when deciding whether to fire them—

including Ossmann—doubles Meredith's liability, not diminishes it. "[I]n *both* cases the employer fires an individual in part because of [race]. Instead of avoiding [§ 1981] exposure, this employer doubles it." *Id.* (emphasis in original).

Next, the two exceptions to unlawful race-based decisionmaking do not apply here. Meredith neither asserted nor proved below that it (i) acted pursuant to a valid affirmative action plan, or (ii) had a strong basis in evidence to believe it could be subjected to disparate-impact liability. *See Ricci v. DeStefano*, 557 U.S. 557, 563, 582-83 (2009).

Finally, Meredith claims the EEO Analysis's use of race was "innocuous" demographic housekeeping, citing *Ramsey v. Board of Regents of Univ. Sys. of Georgia*, 543 F. App'x 966 (11th Cir. 2013) (unpublished). Resp. Br. 26. In *Ramsey*, the decisionmaker collected racial data "[a]fter deciding to recommend that Ramsey be terminated[.]" 543 F. App'x at 968. Race was never a factor. *Id*.

Here, in contrast, the EEO Analysis made Ossmann's race central to Bock's decisionmaking. The comparative racial data was presented to her *before* she decided. Doc. 71-4 at 2-4. And the EEO Analysis

required Bock to consider the racial data *before* making her decision.

Doc. 71-4 at 2 ¶ 10, 4. *Ramsey* is wholly inapposite.

Accordingly, Meredith's admitted use of race as an explicit factor in termination decisions, including Ossmann's, requires that the district court's order be vacated. The case should be remanded for trial.

## 5. VP Bock's Use of the EEO Analysis to Fire Ossmann Makes It Direct Evidence—Even Though Circumstantial Evidence Proves Bock's Use

Meredith, like the district court, says the EEO Analysis pursuant to which Bock acted is not direct evidence of race discrimination because circumstantial evidence established Bock's receipt, review, and use of the form. Resp. Br. 17. Meredith also argues Ossmann had to show "Bock relied *exclusively* on demographic data" in the EEO Analysis. *Id*. (emphasis added). Meredith is wrong on both counts.

*First*, in reverse order, for the EEO form to be direct evidence, Ossmann's race did not have to be the "exclusive[]" reason for Bock's decision. His race needed to be only "*part of* [Bock's] reasoning." *Holland v. Gee*, 677 F.3d 1047, 1058 (11th Cir. 2012) (pregnancy-discrimination case) (emphasis added). This comports with the traditional but-for causation test for § 1981 (and Title VII). *Bostock*,

140 S. Ct. at 1741 (violation where employer fires individual "based *in part* on" protected characteristic) (emphasis added).

Here, the EEO form's color-coded chart made Ossmann's race a *negative* factor favoring dismissal. Doc. 71-4 at 2 ¶ 10, 4. The race factor was also so important to Bock's decision that it was the only one meriting its own color-coded analysis. Consequently, the EEO Analysis made Ossmann's race "part of" the decision whether to fire him. *Holland*, 677 F.3d at 1058.

*Second*, circumstantial evidence may be used to prove the existence of direct evidence of race discrimination. A document like the EEO Analysis that requires the making of a race-conscious decision

> constitutes direct evidence of discrimination if there is sufficient *circumstantial evidence* to permit a jury reasonably to conclude the employer acted pursuant to the [document] when it took the employment actions in question.

*Bass*, 256 F.3d at 1111.

Here, as the district court found, there is ample circumstantial evidence that Bock received and reviewed the EEO Analysis to make her decision. Doc. 95 at 7-8; Op. Br. 13-14. The circumstantial evidence further proves Bock acted in reliance on the EEO Analysis and its color-coded risk chart—with Ossmann's race as a negative—because they

- 17 -

were the only source of her knowledge about him, as nothing else was attached.[4] *See Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999) ("we must assume that some of the decisionmakers examined the tainted evaluations" referred to in their written justifications).

Meredith (like the district court) also says the EEO form cannot be direct evidence because the circumstantial evidence regarding Bock permits an inference that, in addition to Ossmann's race, she considered other factors and that a jury might view other factors as more important than race. Even if true, they make no difference.

Once a plaintiff presents direct evidence of discrimination, causation has been established. *Jones v. Gerwens*, 874 F.2d 1534, 1539 n.8 (11th Cir. 1989). At that point, summary judgment must be denied regardless of any conflicting evidence or inferences. *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (direct-evidence case).

Accordingly, the circumstantial evidence here allows a jury reasonably to find that when Bock fired Ossmann, she acted pursuant to the EEO Analysis which made Ossmann's race an important "part of"

---

[4] Doc. 62-14 at 13:12-:19, 76:1-:4; Doc. 62-21 at 5, 8; Docs. 71-4, 71-16 at 1.

the decision.  That makes the EEO Analysis direct evidence.  *Bass*, 256 F.3d at 1111.  Remand is required.

## 6.  Meredith Failed to Carry Its *McDonnell Douglas* Burden of Production Because It Offered No Specific Evidence of Bock's Actual Reason for Firing Ossmann

It is undisputed that Meredith introduced no specific evidence identifying Bock's actual legitimate reason for firing Ossmann.  Without it, Meredith cannot sustain its *McDonnell Douglas* burden.  The district court's order should be vacated.

Meredith counters with a misleadingly cropped quote from *IMPACT v. Firestone*, 893 F.2d 1189 (11th Cir. 1990).  And with a laundry list of materials about Ossmann's conduct, none of which Bock saw let alone considered.

*First*, Meredith's cropped quote from *IMPACT* states:

> the employer's justification is sufficient if it is based on "proof by any person who made the employment decision, ***or by any other person***."

Resp. Br. 19 (bolded-italics Meredith's).

The problem is the punctuation that ends the quote is misleading.  A comma *actually* follows "other person" in the opinion, not the period Meredith inserted—without brackets to signal its alteration.  Worse,

- 19 -

Meredith cut-off 20 critical words that required an ellipsis to signal their omission, not a period.

The full quote from *IMPACT*, with the missing words italicized, reads:

> In not a single case, did the defendants offer proof by any person who made the employment decision, or by any other person, *stating that the decision was made on the basis of what he or she thought demonstrated the best qualified person*.

*IMPACT*, 893 F.2d at 1193-94.

In the quote, the term "any person" in the phrase "proof by <u>any person who</u> made the … decision" and the subjective pronouns "*he or she*" in the phrase "stating that the decision was made on the basis of what <u>he or she thought</u>…" refer to each other.  That is, they both refer to the *actual* decisionmakers.

So *IMPACT* says two things.  The evidence of an employer's legitimate explanation may come from the decisionmaker or another person.  But, whoever the source, the evidence itself must show what the *actual* decisionmaker "thought" was the legitimate reason for the challenged decision.  *Id*.  "The defendant cannot testify in abstract terms as to what might have motivated the decision-maker."  *Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998).

Where an employer relies on a non-decisionmaker, their testimony must not only specify the decisionmaker's actual reason. It must also satisfy one of the hearsay exceptions in Fed. R. Evid. 803. That is because an employer may present only "admissible evidence of the *actual reason* for the action taken." *IMPACT*, 893 F.2d at 1194 (emphasis added).

Here, Meredith presented no evidence from anyone that specifically identifies Bock's *actual* reason for firing Ossmann. "[Because] there was no evidence that asserted reasons for discharge were *actually relied on*, the reasons are not sufficient to meet defendant's rebuttal burden." *Lee*, 684 F.2d at 775.

*Second*, Meredith's laundry list of materials about Ossmann are useless. There is no evidence Bock knew any of their contents or relied on them. That makes them wholly abstract "reasons … not sufficient to meet defendant's rebuttal burden." *Id*.

Finally, as Ossmann's opening brief explains, the circumstantial evidence that establishes Bock reviewed and used the EEO Analysis is *not* proper evidence from which to draw a possible legitimate reason for Bock firing Ossmann. First, circumstantial evidence lacks "sufficient

clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *IMPACT*, 893 F.2d at 1194 (quotation omitted); *id*. at 1195 n.5.

Second, all reasonable inferences from that same circumstantial evidence must be drawn in *Ossmann*'s favor as non-movant, not Meredith's. As between competing inferences that Bock relied on race versus a legitimate factor, the district court had to find Bock acted based on race. *See Mitchell*, 186 F.3d at 1355 (drawing competing inference in plaintiff's favor).

## 7. VP Bock was the Final Decisionmaker and Received and Reviewed the EEO Analysis to Fire Ossmann

Meredith, repeating the same arguments rejected by the district court, argues there is no evidence Bock was the final decisionmaker or received and reviewed the EEO Analysis. Meredith's real gripe is the absence of *direct* evidence. *See* Resp. Br. 42. "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quotation omitted). The circumstantial evidence is abundant here.

Meredith admitted that (i) Ossmann could be fired only if someone at corporate approved, and (ii) Bock was the only corporate official with *knowledge of* and *involved in* Ossmann's firing.  Doc. 62-21 at 5, 8; Doc. 62-14 at 180:23-181:20; Op. Br. 14 n.10.  Bock was the only corporate official involved in Ossmann's firing who received the EEO Analysis.[5] Doc. 62-14 at 13:12-:19.  Bock's sole source of knowledge on Ossmann was the EEO Analysis.  *Id*. at 13:12-:19, 76:1-:4.  And CBS46 received corporate approval to fire Ossmann by email.  *Id*. at 41:10-:13.

The only reasonable inference to draw from Meredith's admissions about who made the final decision on Ossmann—given only a corporate-level employee had the power to fire Ossmann, and Bock was the only corporate-level employee involved in and with knowledge of Ossmann's firing—is that Bock was the final decisionmaker.

And the only reasonable inference to draw about the EEO Analysis—given Bock was the only corporate official involved in Ossmann's firing who received the EEO form, Berenguer emailed Bock

---

[5] Meredith's sworn interrogatory responses did *not* identify in-house counsel Josh Pila either having knowledge of or being involved in Ossmann's firing, although he apparently was sent the EEO Analysis. Doc. 62-21 at 5, 8.

the EEO form but nothing else about Ossmann, and CBS46 received a return email approving Ossmann's firing—is that Bock received, reviewed, and acted pursuant to the EEO form in firing Ossmann.

These inferences are drawn straight from Meredith's own admissions and Berenguer's testimony. They do not remotely resemble a lengthy chain of inferences bordering on conjecture. *Cora Pub, Inc. v. Cont'l Cas. Co.*, 619 F.2d 482, 485 & n.2 (5th Cir. 1980).

Furthermore, a jury could reasonably infer Bock received, reviewed, and relied on the EEO Analysis under the well-settled inference of receipt-and-knowledge for postal mailings as applied to in-house emails, like those exchanged between Berenguer and Bock:

> the mailing of a letter creates an inference—raises a presumption—that the party to whom it was addressed *received* it … and thus acquired *knowledge* of the matters stated therein[.]

*Schutz v. Jordan*, 141 U.S. 213, 220 (1891) (emphasis added). The Seventh and Eighth Circuits have extended this presumption to emails. *Ball v. Kotter*, 723 F.3d 813, 830-31 (7th Cir. 2013) ("A presumption exists that they [emails] were all properly sent, received, and read."); *Am. Boat Co., Inc. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th

Cir. 2005).  This Court should do the same if any doubt persists about
Bock's use of the EEO form.

### 8.  Meredith Waived or Abandoned All Arguments Regarding Its Assertion that Ossmann Testified He was Not Fired Because of Race

Meredith notes in passing,  "At deposition, Ossmann admitted his
employment was not terminated because of his race. (Doc. 62-2, ¶ 51)."
Resp. Br. 9.[6]  For multiple reasons, Meredith has waived or abandoned
every argument relating to this assertion.

*First*, Ossmann also testified he believed he was unfairly "replaced
by … [a] younger ethnic person," referring to Jennifer Valdez being
Hispanic.  Doc. 62-8 at 14:24-15:5.  He swore in his EEOC Charge that
"I believe that I have been discriminated against … due to my … race,
Caucasian[.]"  Doc. 71-6 at 1.  He also attributed the statement cited by
Meredith to misspeaking or mishearing the question due to fatigue.
Doc. 71-3 ¶ 4.

The magistrate judge found Ossmann's testimony equivocal as to
why he was fired (and so for a jury) and concluded Ossmann satisfied

---

[6] Meredith's record reference violates 11th Cir. R. 28-5, requiring all
"[r]eferences to the record in a brief must be to document number and
page number."  Much of Meredith's brief violates R. 28-5.

his prima facie *McDonnell Douglas* case on the termination-replacement claim.  Doc. 79 at 54-56.  Meredith did not object to the R&R's finding or conclusion—thereby waiving any argument about Ossmann's testimony and prima facie case.  *See* 11th Cir. R. 3-1.

*Second*, Meredith makes no arguments based on Ossmann's statement and offers no authority or discussion as to its import.  Because issues mentioned in passing without arguments or cites to authority are deemed abandoned and will not be considered, Meredith has abandoned this issue.  *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012).

*Finally*, Meredith improperly claims to have "incorporated … [its] Memorandum of Law in Support of its Motion for Summary Judgment and accompanying exhibits."  Resp. Br. 3 n.10.  This Court "will not consider any arguments a party attempts to incorporate by reference to filings in the district court."  *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1250 (11th Cir. 2015).  Whatever points may be in Meredith's district court filings, they have been abandoned.  *Id.*

### 9. Meredith's Conflicting Statements About the EEO Analysis's Origins—Not Its Assertion of Attorney Work Product—Shows Discriminatory Intent

Meredith argues that withholding the EEO Analysis based on its "attorney-client privilege objection" is not proof of pretext.[7]  Resp. Br. 27.  The problem is not the protection asserted.  It is Meredith's conflicting explanations about the EEO Analysis's origins—evidence central to determining if Meredith acted with discriminatory intent— that creates "affirmative evidence of guilt."  *Reeves*, 530 U.S. at 147.

In *Reeves*, the Supreme Court held that even discrimination cases employ "the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'"  530 U.S. at 147.  *Reeves* relied on a pair of criminal cases for support, *Wright v. West,* 505 U.S. 277, 296 (1992); and *Wilson v. United States,* 162 U.S. 613, 620-21 (1896).  *See id.*

Here, the "material fact[s]" at issue, *id.*, are *who* wanted the EEO Analysis prepared and for *what* reason.  Meredith has given conflicting answers.

---

[7] Meredith asserted attorney work-product protection, not attorney-client privilege.  Doc. 57 at 1, 6, 14.  It makes no difference, however.

During discovery, Meredith swore that CBS46 president Lyle Banks asked that EEO Analysis be created and sent to Bock to decide Ossmann's firing. Doc. 62-21 at 8. After discovery, Meredith changed its story to in-house counsel wanting the EEO form created to evaluate potential discrimination risks "in connection with Plaintiff's discharge." Doc. 57 at 14. In-house counsel—as Meredith knew—had no knowledge of or involvement in Ossmann's firing, not even in an "advisory, or consultative role." Doc. 62-21 at 8; *id.* at 5.

Thus, "the trier of fact can reasonably infer from the falsity of the explanation that [Meredith] is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147. And a "jury could reasonably rely on [Meredith]'s conflicting explanations as evidence of [it]s 'consciousness of guilt.'" *United States v. Wilson*, 788 F.3d 1298, 1311 (11th Cir. 2015). A jury may also infer that, by trying to attach a lawyer to the EEO form who had no connection to Ossmann's firing, Meredith sought to give a veneer of legal legitimacy to the EEO form's reliance on race as an explicit factor—more proof of dissembling to conceal its intent.

These inferences are proper on summary judgment. And they are proof of Meredith's unlawful discrimination. *Reeves*, 530 U.S. at 147.

### 10.  Meredith's Cat's-Paw Arguments Are Meritless

Meredith offers a wish list of reasons to reject Ossmann's cat's-paw theory of causation.  None has merit.

*First*, Meredith claims Ossmann failed to argue cat's-paw in opposing summary judgment.  Resp. Br. 29 n.12.  False.  Ossmann's brief raised this argument using the terms "cat's paw" and "rubberstamp" and citing two leading cat's-paw cases.  Doc. 71 at 35-36.

*Next*, Meredith says that, in objecting to the R&R, "Ossmann lumped both his termination and discipline claims together …."  False. As Ossmann's opening brief already explained, the magistrate judge called Ossmann's disparate-treatment claim the "Disparate Discipline" claim, while labeling his termination claim the "Disciplinary Discharge" claim.  Op. Br. 54 n.13 (quoting Doc. 79 at 45, 54).  In his R&R objections, Ossmann used the phrase "termination-discipline claim" to put the focus on his termination, not disparate treatment.  *Id*. (quoting Doc. 87 at 50).  And Ossmann's objections referred to the R&R's finding that he satisfied his prima facie *McDonnell Douglas* burden for his termination claim, not his disparate-treatment claim.  Op. Br. 54-55 n.14.

*Third*, Meredith says—again without authority—that § 1981 requires Ossmann to "show that discriminatory animus was the sole reason for **both** Doerr and Banks' decision to terminate."  Resp. Br. 29 (emphasis Meredith's).  Incorrect.  In *Ziyadat*, 3 F.4th at 1297—a § 1981 *cat's-paw* case—this Court held that a plaintiff "bears the burden of showing that race was *__a__* but-for cause of his injury."  (Emphasis and asterisks added).

*Fourth*, Meredith argues that *Jones v. Gerwens*, 874 F.2d at 1541 n. 13—holding that where multiple people recommend a dismissal, if any of them acts with unlawful animus, the final decision is tainted by discrimination—is inapplicable to § 1981 because *Jones* is a Title VII motivating-factor case, not "but-for" causation.  Not correct.

As *Ziyadat*, 3 F.4th at 1298, explains:

> The cat's-paw theory concerns the conditions under which a lower-level employee's animus can be imputed to a decisionmaker.  The motivating-factor and but-for standards concern causation.  In a cat's-paw case, we merely apply the operative causation standard—whatever it may be—to the actions of the lower-level employee.

*Fifth*, Meredith cites *Mason v. Village of El Portal*, 240 F.3d 1337 (11th Cir. 2001), for the proposition that "where multiple persons are involved in a decision, a plaintiff must prove that the majority of

decisionmakers were unlawfully motivated by race." Resp. Br. 29 n.13. Also incorrect. *Mason* involved § 1983 municipal liability, which—unlike cat's-paw liability—requires proof that the municipality's decisionmakers "not only accepted the [tainted] recommendation …, but knew of and ratified the improper motives behind the[] recommendation." *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir. 1998) (cited in *Mason*, 240 F.3d at 1339).

*Finally*, Meredith claims Ossmann failed to prove Bock did *not* perform an independent investigation. Resp. Br. 31. Not accurate.

Where the actual decisionmaker independently investigates a biased recommendation, the employer avoids cat's paw liability. *Crawford v. Carroll*, 529 F.3d 961, 979 n.21 (11th Cir. 2008). This is called "the independent investigation defense." *Anterio v. City of High Springs Fla.*, 762 F. App'x 891, 899 n.1 (11th Cir. 2019) (unpublished); *Duncan v. Alabama*, 734 F. App'x 637, 639 (11th Cir. 2018) (unpublished); accord *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 352 (6th Cir. 2012).

As a *defense*, it must first be raised by the defendant. *See Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (defendant-

official must first raise qualified immunity defense to shift burden to plaintiff to prove it does not apply); *Banana Servs., Inc. v. M/V Tasman Star*, 68 F.3d 418, 420-21 (11th Cir. 1995) (defendant-carrier must raise fire defense to shift burden of proof to plaintiff to prove different cause). Meredith raised no independent-investigation defense in the district court—claiming instead Bock was not the decisionmaker. So Ossmann did not have to prove Bock did no independent investigation.

## 11. The Unsigned 12/06/17 Warning is Proof that No Violation Occurred and of Pretext

Meredith argues the unsigned 12/06/17 warning is not evidence of pretext because Ossmann did not prove Meredith violated its write-up policy in a discriminatory manner—citing *Rojas v. Fla.*, 285 F. 3d 1339 (11th Cir. 2002), and *Mitchell*, 186 F.3d at 1352. But *Rojas*, 285 F.3d at 1343, involved a disparate-treatment claim where the plaintiff "d[id] not dispute that she was absent or tardy." In *Mitchell*, 186 F.3d at 1355, the plaintiff similarly could not dispute that the challenged layoff policy covered him.

Here, Ossmann's presses only his termination claim, not disparate treatment. On termination claims, an employer's deviation from standard procedure evidences pretext when a disciplinary form "is

incomplete on its face." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 n.17 (11th Cir. 2006).  Because Meredith's policy required a signature, and the unsigned 12/06/17 warning "is incomplete on its face[,]" the 12/06/17 warning is proof of pretext.  *Id*.

Furthermore, Ossmann disputes violating the harassment policy. He testified Doerr said he committed no violation in November 2017. Doc. 71-3 ¶ 23.  And the unsigned 12/06/17 warning, coupled with Meredith's write-up policy requiring the employee's signature and Ossmann signing the earlier 05/15/17 warning, permit the inference that no violation occurred.  The unsigned warning also corroborates Ossmann's testimony that Doerr said Ossmann committed no violation.

Respectfully submitted,

**/s/ *Marc N. Garber***
Marc N. Garber
Georgia Bar No. 283847
mngarber@garberlaw.net
Alan H. Garber
Georgia Bar No. 283840
mngarber@garberlaw.net
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, Georgia 30068-5648
(678) 560-5066 (phone)
(678) 560-5067 (facsimile)

*Attorneys for Plaintiff-Appellant*

# <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 37(f), this document contains 5,841 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document was prepared with a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

*/s/ **Marc N. Garber***

Marc N. Garber

## CERTIFICATE OF SERVICE

On October 28, 2022, the foregoing document was filed with the
Clerk of Court using the CM/ECF system pursuant to 11th Cir. R. 25-3,
which will automatically serve a copy on all counsel of record in this
case.

/s/ *Marc N. Garber*
Marc N. Garber